The Honorable David G Estudillo

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br>　　v.<br><br>SHOHJAHONMIRZO ABDUMALIKOV,<br><br>　　　　　　Defendant. | Case No. 3:24-cv-05786-DGE<br><br>STIPULATED PRELIMINARY INJUNCTION |

**STIPULATION**

On September 19, 2024, the United States Department of Homeland Security, Immigration and Customs Enforcement (ICE), by and through the United States Attorney for the Western District of Washington, filed an ex parte emergency motion for a temporary restraining order (TRO) permitting the government to perform involuntary medical monitoring, testing, and physical examinations; involuntary hydration; and involuntary nutrition for Shohjahonmirzo Abdumalikov, who is currently being held as a civil detainee at the Northwest ICE Processing Center (NWIPC) in Tacoma, Washington. Dkt. 1-2.

On September 20, 2024, this Court previously granted the United States' ex parte motion, pending a preliminary injunction hearing set for October 2, 2024. Dkt. 9. Prior to the hearing on preliminary injunction, Abdumalikov, through his appointed counsel, Rhys Farren, filed a Response to the Government's Motion for Preliminary Injunction After Emergency Ex Parte Motion to Provide Involuntary Medical Treatment (the Response), and the Declaration of Rhys Farren in support of the Response. *See* Dkt. Nos. 16 & 17. The Court conducted a preliminary injunction hearing on October 2, 2024. Dkt. No. 18. Per ICE policy, the Government has evaluated/attempted to evaluate Mr. Abdumalikov on a daily basis since his admission into the Medical Housing Unit in an effort to diagnose and treat Mr. Abdumalikov. Unfortunately, Mr. Abdumalikov has declined consent for mental health services and evaluations. The Government will continue to attempt to monitor the Detainee's mental health and attempt to offer appropriate treatment, including psychological services, counseling and therapy, to enable him to engage in successful voluntary hydration and nutrition.

Pursuant to the Court's Order, Plaintiff United States, through federal agencies ICE and U.S. Public Health Service, Division of Immigration Health Services Corps (IHSC), provided the Court with a status update. Dkt. 13. The United States' status update, supported by the Declaration of Dr. Wang, set forth Abdumalikov's willingness to voluntarily drink Pedialyte, Boost Plus, and water since the Court's issuance of the TRO. Dkt 13, pg 2. However, Abdumalikov has not been able to eat all meals. *See* Dkt. 13, Declaration of Dr. Eddie Wang (Wang Decl.) ¶ 6 (stating that Abdumalikov declines food trays and Halal meal trays). Although Abdumalikov has voluntarily allowed medical staff to take his vital signs (once a day) and obtain his weight (once a week), he has not agreed with all requested medical assessments and ICE believes that involuntary measures must be used. Wang Decl. ¶¶ 3, 7.

In his response, Abdumalikov understands and agrees that medical monitoring to protect his life is appropriate. Based on Abdumalikov's voluntary compliance to drink Pedialyte and Boost Plus, the United States modified its request, limiting the request to allowing the United States to continue involuntary medical monitoring until Abdumalikov ends his hunger strike. *Id*. The United States continues to request that the injunctive relief allows the use of soft medical restraints to assure Abdumalikov's and the medical staff's safety when administering the necessary treatment, if Abdumalikov refuses medical treatment and monitoring. *Id*. at 3.

The United States defines the end of the hunger strike as the time when Abdumalikov begins to eat and to consume adequate fluids, and involuntary medical intervention is no longer medically necessary. *Id*. The United States represented that ICE will file an immediate motion to vacate the TRO and voluntarily dismiss this action as soon as the hunger strike ends. *Id*.

In Response, Abdumalikov did not oppose the United States' request for involuntary medical monitoring. Dkt. 16. Defense counsel further requested that this Court require ICE to submit periodic status reports to "enable Mr. Abdumalikov to purge any liberty restraints." *Id*. at 12. Counsel further requested that the United States provide psychological services, including counseling and therapy in the hopes these services will enable Abdumalikov to engage in successful voluntary hydration and nutrition. *Id*. at 11.

In his Response, the Respondent contends that this case is not one of a detainee intentionally engaging in a "hunger strike" but rather one of a detainee who is unable to eat. The stress, anxiety, and potential depression may have impacted his appetite. ICE provides health care to detained noncitizens in ICE custody to include mental health and behavioral health assessments, diagnosis and treatment. ICE agreed to continue to evaluate Abdumalikov's mental state and continue to offer counseling, treatment, and other protocols to help Mr. Adumalikov's ability to feed himself.

1       If Abdumalikov consents to mental health treatment, ICE confirms that these services are
2 available to him pursuant to ICE policy. ICE will not require Abdumalikov to involuntarily submit
3 to mental health treatment at the NWIPC.
4       This Court conducted a hearing on October 2, 2024, in which Abdumalikov stipulated to
5 the United States request for injunctive relief to allow continued medical monitoring until such
6 time as Abdumalikov consumes adequate nutrition and fluid such that medical intervention and
7 monitoring is no longer medically necessary. Plaintiff United States agrees that Abdumalikov will
8 be provided appropriate psychological services and as determined by DHS mental health staff,
9 provided Abdumalikov consents to receipt of such services.

1 | Presented by:

2 | TESSA M. GORMAN                                     DAVIS WRIGHT TREMAINE LLP
United States Attorney

3

*s/ Michelle R. Lambert*                                    *s/ Rhys M. Farren*
4 | MICHELLE R. LAMBERT, NYS #4666657      RHYS M. FARREN, WSBA #19398
929 108th Avenue NE, Suite 1500
5 | *s/ Alixandria K. Morris*                                    Bellevue, WA 98004-4786
ALIXANDRIA K. MORRIS, TX #24095373    Phone: (425) 646-6132
6 | Assistant United States Attorneys                    Email:  rhysfarren@dwt.com
United States Attorney's Office
7 | Western District of Washington                       *Attorney for Defendant Abdumalikov*
700 Stewart Street, Suite 5220
8 | Seattle, Washington 98101
Phone: (206) 553-7970
9 | Fax:    (206) 553-4067
Email:  michelle.lambert@usdoj.gov
10 | Email:  alixandria.morris@usdoj.gov

11 | *Attorneys for Plaintiff United States*

12 | Dated this 10th day of October, 2024.

**ORDER**

Given the parties stipulated agreement to continued medical monitoring, the Court GRANTS plaintiff United States' request for injunctive relief. Therefore, IT IS HEREBY ORDERED that ICE may undertake necessary medical treatment and testing to save Abdumalikov's life and prevent injury, including:

1. Physical examinations;

2. Laboratory tests, consisting of:

   a. Complete metabolic panel. This test reveals an increase in markers of kidney function in view of any renal injury. The panel tests include: BUN (blood urea nitrogen), creatinine level, and proteins. It also reveals electrolyte disturbances that can lead to heart arrhythmias such as potassium, phosphate, magnesium, and glucose levels.

   b. Complete blood count. This test reveals the hemoglobin level.

   c. Urinalysis, which reveals the presence of ketones, blood and crystals in the urine, as well as specific gravity.

   d. Thiamine levels to assess deficiency after day 14 of a hunger strike.

   e. Electrocardiogram, if the patient shows elevated potassium, which can lead to arrhythmias.

   f. Creatine phosphokinase ("CPK"), which is an enzyme found inside muscle cells and is released into the blood when the muscle cells rupture. The increase in CPK to the breakdown of muscle tissue that can fatally damage other vital organs.

   g. Pre-albumin, used as a marker for nutritional status evaluation, will decrease over time the longer a patient fails to consume adequate nutrition. The pre-albumin level correlates with patient morbidity and mortality risk. Normal pre-albumin is 15-35 mg/dL. When pre-albumin falls to 5-11 mg/DL, significant morbidity risks exist, and aggressive nutritional support is necessary.

IT IS HEREBY ORDERED that if Abdumalikov refuses to cooperate with the necessary medical treatment and monitoring, ICE and medical staff at the NWIPC may use soft medical restraints to ensure the safety of Abdumalikov and the medical staff when administering the

necessary treatment. At such time as these "soft restraints" are necessary, NWIPC staff will provide an explanation of these restraints to Abdumalikov before it applies such measure and will confirm that he understands the details of the measures and why. This explanation will be interpreted for Abdumalikov in his native Uzbek language.

This order shall continue until Abdumalikov begins to eat and to consume adequate fluids, and involuntary medical intervention is no longer medically necessary, as determined by ICE and IHSC according to written policies and guidelines. ICE is directed to provide weekly status updates to this Court. ICE is further directed, by and through the United States Attorney for the Western District of Washington, to notify this Court and Defendant's counsel immediately in the event Abdumalikov begins to eat and to consume adequate fluids and nutrition. ICE is directed to provide a copy of this order to Abdumalikov as soon as possible.

Dated this 10th day of October, 2024.



David G. Estudillo
United States District Judge